Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
........................................................................X
STRATEGIC GROWTH INTERNATIONAL, INC.,

                Plaintiff,

       -against-

TERREMARK WORLDWIDE, INC.,
MANUEL MEDINA, and JOSE SEGRERA,

                Defendants.

........................................................................X

NEW YORK
COUNTY CLERK'S OFFICE

MAY 17 2007

NOT COMPARED
WITH COPY FILE

Index No. 106784/07

**SUMMONS**

The basis of the venue is
Plaintiff's principal
place of business

**TO THE ABOVE NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint of $6,000,000 plus interest, and such other and further relief as this Court deems just and proper including the costs and disbursements of this action and reasonable attorneys' fees.

Dated: New York, New York
      May 17, 2007

GUZOV OFSINK, LLC
*Attorneys for Plaintiff*
*Strategic Growth International, Inc.*

By: _____
      Debra J. Guzov

600 Madison Avenue, 14th Floor
New York, New York 10022
(212) 371-8008

TO:    Terremark Worldwide, Inc.
       2601 South Bayshore Drive
       9th Floor
       Miami, Florida 33133

       Manuel Medina
       172 W 11th St
       Hialeah, Florida 33010-3857

       Jose Segrera
       7630 SW 81st Avenue
       Miami, Florida 33143

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

STRATEGIC GROWTH INTERNATIONAL, INC.,

    Plaintiff,

    against

TERREMARK WORLDWIDE, INC.,
MANUEL MEDINA, and JOSE SEGRERA

    Defendants.

NEW YORK
COUNTY CLERK'S OFFICE

MAY 1 7 2007

NOT COMPARED
WITH COPY FILE

Index No.: _____

**COMPLAINT**

Strategic Growth International, Inc. ("Strategic Growth" or "Plaintiff") by its attorneys, Guzov Ofsink, LLC, as and for its Complaint against defendants Terremark Worldwide, Inc. ("Terremark"), Manuel D. Medina ("Medina"), and Jose Segrera ("Segrera") (collectively the "Defendants"), alleges the following upon information and belief:

### Substance of the Action

1.    This action arises out of fraud carried out by Medina and his co-conspirator Segrera, both officers of Terremark, in connection with the sale and purchase of shares in Terremark. In early 2002, Medina and Segrera repeatedly approached Strategic Growth and requested that Strategic Growth provide certain consulting and investing services on behalf of Terremark. Knowing that Terremark could not afford Strategic Growth's standard rates, Medina and Segrera made false and misleading statements to Strategic Growth by promising Strategic Growth equity in Terremark in lieu of Strategic Growth's standard cash compensation. Medina and Segrera knew, however, that Terremark would never fully honor the agreement permitting Strategic Growth to fully exercise its options to purchase shares of Terremark. Yet, based on these false and deceitful statements, Strategic Growth entered into an agreement with Terremark.

whereby Strategic Growth agreed to provide certain consulting and investing services, and in exchange Terremark agreed to grant Strategic Growth options to purchase more than one million shares of Terremark's common stock at a set exercise price on a cashless basis. There is no dispute that Strategic Growth dutifully met its obligations under the parties' agreement. Terremark, however, breached the parties' agreement by refusing to acknowledge and grant Strategic Growth's rightful equity in Terremark.

2.    Against this factual background, Strategic Growth brings this action for the following claims against Medina, Segrera, and Terremark: (a) violation of Rule 10b-5 (as promulgated by the Securities and Exchange Commission pursuant to Section 10(b) of the Securities Exchange Act of 1934) by Medina and Segrera; (b) breach of contract by Terremark; (c) breach of the covenant of good faith and fair dealing by Terremark; (d) negligence as to all defendants; (e) negligent misrepresentation as to all defendants; (f) intentional concealment/negligent nondisclosure as to all defendants; and (g) unjust enrichment as to Terremark.

3.    By this complaint, Strategic Growth also seeks relief in the form of: (a) declaratory judgment confirming Strategic Growth's rights to certain equity in Terremark; (b) actual, consequential, and restitutionary damages, as well as other monetary relief, in amounts to be determined at trial, but reasonably believed to be nearly 1.0 million dollars; (c) punitive damages, in amounts to be determined at trial, but reasonably believed to be in excess of 5.0 million dollars; (d) prejudgment interests; (e) reasonable attorneys' fees and costs; and (f) such other legal and equitable relief that the Court deems just and proper.

## Jurisdiction and Venue

4.    Defendants are subject to the personal jurisdiction of this Court and venue is proper in this County pursuant to Sections 310 and 503 of the New York Civil Practice Law and Rules, as a substantial part of the acts or omissions complained of herein occurred in New York County and at all relevant times to the allegations contained herein, Defendants conducted and transacted business in New York County.

5.    Further, Defendants consented to this jurisdiction and venue, pursuant to the parties' agreement.

## The Parties

6.    Strategic Growth is a Delaware corporation with its principal place of business located at 150 East 52nd Street, New York, New York 10022.

7.    Terremark is a Delaware corporation with its principal place of business located at 2601 South Bayshore Drive, Suite 900, Miami, Florida 33133.

8.    Defendant Medina is an individual residing in Florida, and is currently the Chief Executive Officer of Terremark.

9.    Defendant Segrera is an individual residing in Florida, and is currently the Chief Financial Officer of Terremark.

## The Facts

### The Misrepresentations

10.    In early 2002, Medina and Segrera, on behalf of Terremark, repeatedly approached Strategic Growth, by and through its officers Richard Cooper and Stanley Altschuler, and requested that Strategic Growth provide certain investing and consulting services on behalf of Terremark.

3

11.    Specifically, Medina and Segrera met with Richard Cooper and Stanley Altschuler (officers of Strategic Growth) to discuss Strategic Growth's fees for providing such services. Terremark, however, could not or would not agree to pay Strategic Growth's standard rates.

12.    Rather, after numerous rounds of negotiations, Terremark offered Strategic Growth options to purchase a certain number of shares of Terremark's common stock on a cashless basis, in lieu of Strategic Growth's standard cash compensation. In order to convince Strategic Growth that stock in Terremark was or would be valuable, Medina and Segrera repeatedly, yet falsely, claimed that Terremark had secured contracts and agreements with major corporate entities that were committed to using and paying for Terremark's network access point and related internet infrastructure and managed services.

13.    Based solely on Medina and Segrera's promises and representations, Strategic Growth agreed to reduce its standard fees in exchange for the options, as promised by Medina and Segrera.

14.    Medina and Segrera were fully aware that Strategic Growth had agreed to lower its standard consulting and investing fees in reliance of Medina and Segrera's promises that Strategic Growth would receive options to purchase shares of Terremark's common stock. Medina and Segrera also knew that Strategic Growth would not have agreed to lower its fees or even agreed to undertake services on behalf of Terremark, but for the promises made by Medina and Segrera.

15.    Even as Medina and Segrera made these promises to Strategic Growth, in order to induce Strategic Growth to provide its services at a discounted rate, Medina and Segrera never intended to honor fully the promises made to Strategic Growth. Moreover, Medina and Segrera

4

were fully aware that Terremark had no contracts with any major corporate entities, and that no such entities were committed to using or paying Terremark for its network access point and related internet infrastructure and managed services. As Terremark lacked the technology, resources, and skills to service such entities, Medina and Segrera knew that Terremark was not and would never be in a position to attract or service such entities.

### The Parties' Agreement

16.     In any event, as a direct result of Medina and Segrera's misleading statements concerning the sale and purchase of Terremark stock, on or about April 1, 2002, Strategic Growth and Terremark entered into an agreement (the "Agreement"), whereby, among other things, Strategic Growth and Terremark agreed that Strategic Growth would provide the following services:

      a)     Consult the management of [Terremark] on Investor Relations aspects of shareholder communications, including arranging and conducting meetings with the professional investment community and investor groups; communicating the corporate message to specified audiences, and enhancing relations with security analysts and the financial press.

      b)     Help develop and implement a comprehensive Investor Relations program. The program will be designed to achieve results-oriented goals and objectives.

      c)     Provide professional staff services as may be reasonably required to help [Terremark] carry out is programs and objectives.

17.     In exchange for these services, Terremark agreed to "pay [Strategic Growth] a monthly retainer fee of $10,000 (U.S.) for services under this [A]greement" and the Agreement was to commence on April 1, 2002 and to extend for 12 months.

18.    With regard to Strategic Growth's options to purchase shares of Terremark's common stock, the Agreement expressly provided that:

> In addition, immediately upon execution of this agreement, [Terremark] agrees to grant [Strategic Growth] options to purchase 600,000 shares of [Terremark's] common stock at an exercise price of $0.04 and 600,000 options at $0.75 per share. Such options will be of a five-year duration. At the option of [Strategic Growth], such options may be exercised on a cashless basis. The options will have piggy-back registration rights for one year with respect to the shares underlying the options, with demand registration rights after one year, and will be subject to non-dilution protection against the following events: stock splits, reverse splits and stock dividends. If in the event [Terremark] reverse splits the stock, [Strategic Growth's] options that are issued pursuant to this agreement (both those vested and unvested) shall be adjusted by [Terremark] in an amount to ensure that the number of options issued to [Strategic Growth] following such reverse shall be no less than 800,000 options, but in no event shall such number of adjusted options exceed 2% of the total shares outstanding subsequent to the reverse split. The options may be transferred in whole or in part to one or more officers of [Strategic Growth].
>
> The options will be vested as follows:
> The 600,000 options at $0.40 will vest immediately upon the signing of this agreement (such options are automatically vested and not subject to termination provisions), and the remaining options shall be vested as follows: 50% on December 2, 2002, and 50% on March 2, 2003.

19.    The Agreement contained no language and provided no formal instructions as to how Strategic Growth was to exercise its options.

20.    The Agreement made no reference to a warrant exercise form, and made no requirement that Strategic Growth represent or surrender such a form to Terremark in order to exercise the options.

21.    During the course of the Agreement, Strategic Growth dutifully met its obligations under the Agreement by providing the requested consulting and investing services without any complaints from Terremark. Indeed, on numerous occasions, Terremark thanked and praised Strategic Growth for its professional services.

### Strategic Growth Exercises Certain Options in May 2004

22.    On or about May 5, 2004, Strategic Growth, by its Chairman Richard Cooper, contacted Terremark, by and through its Chief Financial Officer Segrera, via facsimile, whereby Strategic Growth informed Terremark that "[w]e hereby request 'cashless' exercise of 330,000 options granted to us in our Agreement with [Terremark] of April 1, 2002."

23.    The May 2004 Fax further set forth the calculation of the cashless exercise, whereby Strategic Growth demonstrated that it was claiming and was entitled to 154,000 shares to be issued in the name of Strategic Growth.

24.    Within a few months, Terremark — without requiring any further information or the submission of other document (including but not limited to a warrant exercise form) — honored its obligation under the Agreement and registered all of the requested 154,000 shares, and further provided Strategic Growth with a copy of the registration statement.

### Terremark Breaches the Agreement in 2007

25.    More recently, however, Terremark has refused to honor the Agreement, and will not register additional shares for Strategic Growth or its appropriate officers. Rather, Terremark has asserted that because Strategic Growth failed to present and surrender certain warrant exercise forms, Strategic Growth's rights to a significant amount of shares valued at more than 2.5 million dollars are of no further force or effect.

26.    On February 23, 2007, Strategic Growth, by and through its Chief Executive Officer Richard Cooper, contacted Terremark, by and through its Chief Financial Officer Segrera, via facsimile, whereby Strategic Growth informed Terremark that:

> In accordance with our agreement dated April 1, 2002, Strategic Growth International, Inc. ("SGI") hereby exercises on a 'cashless' basis certain options described below as of February 23, 2007. Such options were granted to us pursuant to the agreement ("the Agreement") between Terremark Worldwide ('the Company') and SGI. We hereby request free trading stock containing no restrictive."

27.    Strategic Growth's February 2007 Fax asserting its right to exercise certain options on a cashless basis was in all significant aspects nearly identical to Strategic Growth's May 2004 Fax, which similarly asserted right to exercise certain options – a request that Terremark honored without delay.

28.    Likewise, the February 2007 Fax further set forth the calculation of options to be registered and issued to Strategic Growth in the names of its officers Richard Cooper and Stanley Altschuler.

29.    Subsequent to the February 2007 Fax, on March 7, 2007 Strategic Growth, by and through its Chairman Richard E. Cooper, again contacted Terremark, by and through its Chief Financial Officer Segrera, via facsimile and overnight mail and informed that: "[a]s you know the options are due to expire on April 1, 2007. As I am overseas for a few days, I would like to receive some kind of communications from you to our request on how you plan to proceed."

30.    In response to Strategic Growth's February 2007 Fax and March 2007 Fax, on March 12, 2007 Terremark, by and through its Chief Executive Officer Medina, stated:

> "Jose passed your March 7, 2007 and February 23, 2007 letter to me. I would like to apologize for not responding to you sooner, but we appear to have a discrepancy in the

8

number of post reverse-split warrants held by SGI which we need to discuss. . . . I'm looking forward to catching up with you and hearing about what you are up to, and as I stated, I'm sure we can resolve any discrepancy with the warrant numbers over lunch."

31.    As set forth in the Terremark Letter, Terremark was fully aware that the options were due to expire on April 1, 2007, and yet Terremark's only concern was the correct number post reverse-split warrants that were held by Strategic Growth. At that time, Terramark did not challenge Strategic Growth's entitlement to the options or that Strategic Growth had not properly exercised its rights by failing to present or surrender a warrant exercise form.

32.    In reply, Strategic Growth, by and through its Chairman Richard Cooper, again contacted Terremark, by and through its Chief Executive Office Medina, via facsimile and requested a meeting to address and resolve the manner, and on March 23, 2007 wrote: "[s]ince the expiration date is coming so rapidly, I would ask if we could talk briefly early in the week either Monday afternoon or Tuesday . . . . Perhaps a meeting in person would be most useful as I would also love to see you and get a brief update."

33.    On or about March 27, 2007, Richard Cooper and Stanley Altschuler of Strategic Growth and Medina and Segrera of Terremark met in Miami to address the matter.

34.    During the March 27, 2007 meeting, which lasted for more than one hour, both Medina and Segrera affirmatively acknowledged that the parties' Agreement provided that, where as here, "[i]f in the event [Terremark] reverse splits the stock, [Strategic Growth's] options that are issued pursuant to this Agreement shall be adjusted by [Terremark] in an amount to ensure that the number of options issued to [Strategic Growth]." (emphasis added).

9

35.    Both Medina and Segrera, however, maintained that notwithstanding the plain and unambiguous language in the Agreement, it was not fair or reasonable that Strategic Growth was entitled an additional 30,000 free trading shares.

36.    Terremark presented no other reason for refusing to honor the Agreement, and never informed Strategic Growth that unlike the parties past dealings in February 2004, Terremark now required Strategic Growth to present and surrender warrant exercise forms in order to assert rights to Terremark shares.

37.    On March 28, 2007, Strategic Growth, by and through its Chairman Richard Cooper, again contacted Terremark, by and through its Chief Executive Officer Medina, via facsimile, whereby Strategic Growth summarized the substance of the parties' March 27, 2007 meeting, and again demanded that a block of 70,000 option shares, and a second block of 400,000 options shares be issued to Strategic Growth.

38.    Terremark did not respond to the March 28, 2007 Fax, rather its counsel responded on April 3, 2007. For the first time, Terremark, informed Strategic Growth that it had failed to properly exercise its rights and that the warrants -- valued at over 2.5 million dollars -- had expired and were of no further force or effect:

> Your telefaxed communication to [Terremark], dated March 28, 2007, references a purported exercise of a right to acquire a block of 70,000 option shares, and a second block of 400,000 options shares. However, all rights under Warrant Number W-040102 and under Warrant Number W-050504-01 lapsed at 5:00 p.m. ET, on March 31, 2007, without any presentation and surrender of either warrant to [Terremark], as clearly and explicitly required by the terms of the warrants themselves. Accordingly, [Terremark] has noted its records to reflect that these warrants have expired and have no further force or effect. (emphasis added).

## FIRST CAUSE OF ACTION
### (VIOLATION OF 10b-5 BY MEDINA AND SEGRERA)

39.    Strategic Growth hereby realleges and incorporates by reference the allegations of paragraphs 1 through 38 of this Complaint.

40.    Defendants Medina and Segrera made false and misleading statements of material fact in connection with the purchase and sale of shares of Terremark.

41.    In an effort to induce Strategic Growth to provide its investing and consulting services on behalf of Terremark at a discounted rate, defendants Medina and Segrera promised Strategic Growth certain options to purchase shares of Terremark's common stock, in lieu of paying Strategic Growth its standard fee.

42.    At the time Medina and Segrera made the promises, however, they knew that Terremark would not fully honor the promises – particularly in the event that Terremark reverse split the stock – an event that did occur. Further, Medina and Segrera made repeated misrepresentations about Terremark's "clients" which were purportedly committed to using and paying for Terremark's network access point and related internet infrastructure and managed services, when Medina and Segrera knew that no such "clients" existed and that Terremark lacked the resources and technical sophistication to attract and service large corporate entities.

43.    Strategic Growth relied on Medina and Segrera's promises, as demonstrated by the fact that Strategic Growth reduced its standard fee in exchange for the promised options to purchase over one million shares of Terremark's common stock at a fixed exercise price on a cashless basis.

44.    As a direct result of Medina and Segrera's fraud, Strategic Growth has suffered damages to be determined at trial, but reasonably believed to be nearly 1.0 million dollars.

11

representing the actual value of investing and consulting services together with the value of stock to which Strategic Growth is entitled.  Further, as a result of the tortious conduct, Strategic Growth also seeks punitive damages, in an amount to be determined at trial, but reasonably believed to be in excess of 5.0 million dollars.

## SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT BY TERREMARK)

45.     Strategic Growth hereby realleges and incorporates by reference the allegations of paragraphs 1 through 38 and 40 through 44 of this Complaint.

46.     Strategic Growth and Terremark entered into the Agreement whereby, among other things, Strategic Growth agreed to provide consulting and investing services to Terremark, and in exchange Terremark agreed to pay a modest monthly cash fee and grant Strategic Growth options to purchase more than one million shares of Terremark's common stock on a cashless basis.

47.     Strategic Growth fully performed its obligations under the parties' Agreement.

48.     Strategic Growth has attempted to exercise the balance of its options to purchase shares of Terremark's common stock on a cashless basis, pursuant to the terms of the Agreement.

49.     Terremark has breached the parties' Agreement, by asserting that Strategic Growth's rights to exercise its options have expired, and are of no force or effect.

50.     As a direct result of Terremark's breach of contract, Strategic Growth has suffered damages for loss of compensation in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars.

## THIRD CAUSE OF ACTION
## (BREACH OF THE COVENANT OF

## GOOD FAITH AND FAIR DEALING BY TERREMARK

51.     Strategic Growth hereby realleges and incorporates by reference the allegations of paragraphs 1 through 38, 40 through 44 and 46 through 50 of this Complaint.

52.     It is implied in the Agreement that neither party would commit actions or omissions that would have the effect of destroying or injuring the right of the other party to receive the intended benefits of the Agreement.

53.     Terremark's failure to inform Strategic Growth that Terremark would honor Strategic Growth's right to exercise its options only if Strategic Growth presented or surrendered a warrant exercise form – when no such form had been required in the past – denied Strategic Growth the intended benefits of the Agreement.

54.     As direct result of Terremark's breach of the covenant of good faith and fair dealing implied the Agreement, Strategic Growth has suffered damages for loss of compensation in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars.

## FOURTH CAUSE OF ACTION
### (NEGLIGENCE AS TO ALL DEFENDANTS)

55.    Strategic Growth hereby realleges and incorporates by reference the allegations of paragraphs 1 through 38, 40 through 44, 46 through 50 and 52 through 54 of this Complaint.

56.    Defendants owed a fiduciary duty to Strategic Growth to timely inform Strategic Growth about how to properly exercise its options.

57.    Defendants, however, failed to properly exercise reasonable care to ensure that Strategic Growth was adequately informed about how to properly exercise its options – namely, Terremark's requirement that Strategic Growth present and surrender warrant exercise forms, which Terremark had not previously required.

58.    Given that Defendants had numerous opportunities to inform Strategic Growth that Terremark had drastically altered the parties' past procedures concerning Strategic Growth's options to purchase share of Terremark's common stock on cashless basis, Defendants' actions and omissions were intentional and deliberate, and involve circumstances of malice, fraud, bad faith, bad motive, all of which demonstrate reckless, willful, wanton, and conscious disregard or indifference to Strategic Growth's rights.

59.    As a direct result of Defendants' negligence, Strategic Growth has suffered damages for loss of compensation in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars. Further, as a result of the tortious conduct Strategic Growth also seeks punitive damages in an amount to be determined at trial, but reasonably believed to be in excess of 5.0 million dollars.

14

## FIFTH CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATION AS TO ALL DEFENDANTS)

60.    Strategic Growth hereby realleges and incorporates by reference the allegations of paragraphs 1 through 38, 40 through 44, 46 through 50, 52 through 54 and 56 through 59 of this Complaint.

61.    Defendants owed a fiduciary duty to Strategic to exercise reasonable care to ensure that the truth, accuracy, and completeness of the representations made to Strategic Growth in response to numerous inquiries about how Terremark intended to address Strategic Growth's right to exercise options to purchase shares of Terremark's common stock on a cashless basis.

62.    Defendants assured Strategic Growth that the parties needed to resolve only the number of shares to be granted to Strategic Growth, but not whether Strategic Growth had properly exercised the options by failing to present or surrender a warrant exercise form -- which Terremark had not previously required.

63.    Defendant's assurances were false, incomplete, and inaccurate, and yet Defendants knew, intended, and understood that Strategic Growth would be relying on such assurances in determining whether or how Terremark intended to address Strategic Growth's request to exercise options to purchase shares of Terremark's common stock on a cashless basis. Defendants intentionally misled Strategic Growth in the hopes that Strategic Growth's rights would expire and become unenforceable.

64.    Strategic Growth relied and acted upon Defendants' false, incomplete, and inaccurate assurances, and such reliance was foreseeable and justified given the parties' prior dealings in connection with Strategic Growth's right to exercise certain options.

65.     Defendants' actions or omissions were intentional and deliberate, and involve circumstances of malice, fraud, bad faith, and bad motive, all of which demonstrate reckless, willful, wanton, and conscious disregard or indifference to Strategic Growth's rights.

66.     As a direct result of Strategic Growth's reliance on Defendants' false, incomplete, and inaccurate assurances, Strategic Growth has suffered damages for loss of compensation in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars. Further, as a result of the tortious conduct Strategic Growth also seeks punitive damages in an amount to be determined at trial, but reasonably believed to be in excess of 5.0 million dollars.

### SIXTH CAUSE OF ACTION
### (INTENTIONAL CONCEALMENT
### <u>NEGLIGENT NONDISCLOSURE AS TO ALL DEFENDANTS)</u>

67.     Strategic Growth hereby realleges and incorporates by reference the allegations of paragraphs 1 through 38, 40 through 44, 46 through 50, 52 through 54, 56 through 59 and 61 through 66 of this Complaint.

68.     Defendants knowingly or recklessly concealed or failed to exercise reasonable care to disclose material facts concerning Strategic Growth's right to exercise options to purchase shares of Terremark's common stock on a cashless basis, and Defendants' intentions to honor Strategic Growth's right.

69.     Defendants knowingly or recklessly concealed or failed to exercise reasonable care to disclose that the fact that Defendants would not comply with the parties' prior dealing in connection with Strategic Growth exercising its options to purchase shares of Terremark's common stock on a cashless basis. Rather, Terremark would now require Strategic Growth to present and surrender warrant exercise forms.

70. Defendants intentionally concealed and failed to exercise reasonable care to disclose this material fact with the knowledge, intent, and understanding that the concealment and nondisclosure would create the false impression on Strategic Growth's part that Terremark intended to honor its obligation upon determining how many shares were to be held by Strategic Growth. Defendants intentionally misled Strategic Growth in the hopes that Strategic Growth's rights would expire and become unenforceable.

71. Defendants intentionally concealed and failed to exercise reasonable care to disclose this material fact with the knowledge, intent, and understanding that the intentional concealment and negligent nondisclosure would create a false impression on Strategic Growth's part that Strategic Growth had properly informed Defendants that Strategic Growth intended to exercise its options to purchase certain shares of Terremark's common stock as Strategic Growth had done in the past.

72. As a direct result of Defendants intentional concealment and negligent nondisclosure of material facts, Strategic Growth has suffered damages for loss of compensation in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars. Further, as a result of the tortious conduct Strategic Growth also seeks punitive damages in an amount to be determined at trial, but reasonably believed to be in excess of 5.0 million dollars.

SEVENTH CAUSE OF ACTION
(UNJUST ENRICHMENT AS TO TERREMARK)

73. Strategic Growth hereby realleges and incorporates by reference the allegations or paragraphs 1 through 38, 40 through 44, 46 through 50, 52 through 54, 56 through 59, 61 through 66 and 68 through 72 of this Complaint.

74. As a direct result of Terremark's wrongful acts, conduct, and omissions described, Terremark has been unjustly enriched at the expense of Strategic Growth.

17

75.    Under the circumstances described herein, it would be inequitable and unfair to allow Terremark to gain or profit from its wrongdoing.

76.    Under the circumstances described herein, it would be inequitable and unfair to allow Terremark to retain the benefit of Strategic Growth's investing and consulting services, when Terremark has refused to fully compensate Strategic Growth for such services.

77.    As a direct result of Terremark's conduct, acts or omissions, Strategic Growth is entitled to an award of rescission and/or restitutionary damages in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars.

## EIGHTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT)

78.    Strategic Growth hereby realleges and incorporates by reference the allegations of paragraphs 1 through 38, 40 through 44, 46 through 50, 52 through 54, 56 through 59, 61 through 66, 68 through 72 and 74 through 77 of this Complaint.

79.    Strategic Growth fully performed its duties under the Agreement.

80.    Terremark has refused and is refusing to compensate for investing and consulting services performed by Strategic Growth.

81.    Terremark has asserted and is asserting that Strategic Growth's options to purchase shares of Terremark's stock on a cashless basis have expired, because Strategic Growth failed to present and surrender warrant exercise forms – which Terremark had not previously required or demanded in the past.

82.    Strategic Growth was not required to submit warrant exercise forms, and Terremark waived or is estopped from requiring a warrant exercise form in light of the parties' prior dealings.

18

83.    An actual and real controversy and dispute exists between Strategic Growth and Terremark concerning Strategic Growth's right to exercise options to purchase shares of Terremark's common stock on a cashless basis, requiring a declaration from this Court against Terremark that Strategic Growth has the right to exercise options to purchase shares of Terremark's stock on a cashless basis, that the time to exercise has not expired and Terremark must issue and register the stock.

**WHEREFORE**, Strategic Growth seeks the following relief:

(a)    As for the First Cause of Action for violation of Rule 10b-5, as promulgated by the Securities and Exchange Commission pursuant to Section 10(b) of the Securities Exchange Act of 1934, Strategic Growth demands judgment against Medina and Segrera, and seeks damages in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollar, as well as punitive damages in an amount to be determined at trial, but reasonably believed to be in excess of 5.0 million dollars;

(b)    As for the Second Cause of Action for breach of contract, Strategic Growth demands judgment against Terremark, and seeks damages in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars;

(c)    As for the Third Cause of Action for breach of the covenant or good faith and fair dealing, Strategic Growth demands judgment against Terremark, and seeks damages in an amount to be determined at trial, but reasonably believed to be nearly 1.0 million dollars;

19

(d)     As for the Fourth Cause of Cause of Action for negligence, Strategic
Growth demands judgment against Defendants, and seeks damages in
an amount to be determined at trial, but reasonably believed to be
nearly 1.0 million dollars, as well as punitive damages in an amount to
be determined at trial, but reasonably believed to be in excess of 5.0
million dollars;

(e)     As for the Fifth Cause of Action for negligent misrepresentation,
Strategic Growth demands judgment against Defendants, and seeks
damages in an amount to be determined at trial, but reasonably
believed to be nearly 1.0 million dollars, as well as punitive damages in
an amount to be determined at trial, but reasonably believed to be in
excess of 5.0 million dollars;

(f)     As for the Sixth Cause of Action for intentional concealment and
negligent nondisclosure, Strategic Growth demands judgment against
Defendants, and seeks damages in an amount to be determined at trial,
but reasonably believed to be nearly 1.0 million dollars, as well as
punitive damages in an amount to be determined at trial, but reasonably
believed to be in excess of 5.0 million dollars;

(g)     As for the Seventh Cause of Action for unjust enrichment, Strategic
Growth demands judgment against Terremark, and seeks damages in
an amount to be determined at trial, but reasonably believed to be
nearly 1.0 million dollars;

(h)    As for the Eighth Cause of Action, Strategic Growth demands

declaratory judgment against Terremark confirming Strategic Growth's

right to exercise options to purchase shares of Terremark's stock has

not expired, and that Terremark must issue and register the stock;

(i)    Prejudgment interests;

(j)    Reasonable attorneys' fees and costs; and

(k)    Other legal and equitable relief that this Court deems just and proper.

Dated: New York, New York
       May 17, 2007

GUZOV OFSINK, LLC

By: _____

Debra Guzov (DG 7125)
D. Reeves Carter (DC 0045)
600 Madison Avenue, 14th Floor
New York, New York 11022
Tel.: (212) 371-8008
Fax: (212) 688-7273

*ATTORNEYS FOR PLAINTIFF*
*STRATEGIC GROWTH*
*INTERNATIONAL, INC.*

21