IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

TERREMARK WORLDWIDE, INC.,
a Delaware corporation,

    Plaintiff,
vs.

STRATEGIC GROWTH INTERNATIONAL, INC., a Delaware corporation,

    Defendant.
_____/



07-14155CA 10

ORIGINAL FILED MAY 14 2007 HARVEY RUVIN CLERK

## COMPLAINT FOR DECLARATORY RELIEF

TERREMARK WORLDWIDE, INC., a Delaware corporation ("TWW"), hereby sues STRATEGIC GROWTH INTERNATIONAL, INC., a Delaware corporation ("SGI"), and in support thereof states as follows:

1. This is an action seeking a declaratory judgment pursuant to Florida Statutes Chapter 86.

2. TWW is a Delaware corporation headquartered in Miami-Dade County, Florida.

3. SGI is a Delaware corporation which has conducted business in the State of Florida which is substantial and not isolated in nature. SGI negotiated with TWW in the State of Florida for the contract described hereinafter, and rendered services to TWW in the State of Florida. Additionally, SGI sent its representatives into the State of Florida on numerous occasions to conduct business activities. SGI subjected itself to the jurisdiction of the courts of Florida pursuant to Florida Statutes section 48.193.

EX. A

4. TWW is a public company, with its shares traded (at all times material) on the American Stock Exchange. During or about 2002, TWW was considering a modification in its capital structure so that it would consolidate its shares of common stock (also referred to as a "reverse stock split"), with one share of "new" stock being exchanged for every two shares of then-currently outstanding shares.

5. During or about April 2002, TWW met with SGI in the State of Florida, and a contract (Exhibit 1 hereto) was negotiated.

6. A portion of the agreement between the parties (bottom of page 2 and top of page 3 of Exhibit 1) called for SGI to receive options to purchase shares of TWW's common stock, consisting of 600,000 shares at a price of $0.40 per share and 600,000 shares at a price of $0.75 per share, subject to reverse stock splits. Based upon the premise that a "one-for-two" consolidation or reverse stock split would be carried out, SGI was assured that it would receive at least 800,000 options.

7. Thereafter, the planned "one-for-two" consolidation of shares was radically modified, and eventually was put into place on the basis of a "one-for-ten" reverse stock split.

8. On or about April 1, 2002, TWW issued and delivered to SGI the Warrant attached hereto as Exhibit 2, reflecting the right to buy 600,000 shares at $0.75 per share, subject to any reverse stock split, with an expiration date of March 31, 2007. The terms of the Warrant, delivered to and accepted by SGI, included a provision that in order to exercise rights under the Warrant, the original Warrant had to be surrendered to TWW.

9. On May 5, 2004, TWW issued to SGI, and SGI accepted, a Warrant authorizing the purchase of 270,000 shares of common stock at $0.40 per share. (*See* Exhibit 3.) The

2

Warrant reflected that the original 600,000 shares referenced in Exhibit 1, priced at $0.40 per share, had been reduced to 270,000 by virtue of the fact that SGI had previously exercised an option on 330,000 shares. The 270,000 share Warrant (Exhibit 3) provided that rights under the Warrant expired on March 31, 2007, and that the exercise of the Warrant rights required presentation and surrender of the original Warrant certificate itself to TWW.

10. On May 16, 2005, TWW 's shareholders approved a one for ten reverse stock split which became effective on May 17, 2005. The result of the reverse stock split was that one share of new stock was issued to replace every ten shares of existing stock.

11. On February 23, 2007, TWW, SGI wrote to TWW's chief financial officer and expressed an intent to partially exercise its warrants to purchase 2,000 shares of TWW's common stock at $0.40 per share and 3,000 shares of TWW's common stock at $0.75 per share. (*See* Exhibit 4.) In said correspondence, SGI asserted a mathematical formula for determining the number of shares which potentially remained subject to its warrant rights. SGITWW. However, SGI's purported calculation was not in accord with the meaning and intent of the parties' agreement. When the parties entered into the agreement, which was during a time in which the company was contemplating a consolidation on a "one-for-two" basis, the parties intended the undefined terms "reverse splits the stock" to encompass only a one-for-two split. This is evident from a reading of all the language together in the agreement concerning SGI's options. The TWW disagrees with and disputes the unreasonable interpretation with the absurd results to which SGI's method of calculation would lead, given that the company eventually and actually did a consolidation on a "one-for-ten" basis.

3

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

12. In addition to making its request using an improper method of calculation, Defendant's failed to tender the original Warrant certificate to Plaintiff together with the Warrant Exercise Form, as required by the terms of the Warrant.

13. On March 28, 2007, SGI sent a telefax to TWW (Exhibit 5 hereto), revising its February 23, 2007 communication and purporting to exercise an option to purchase 70,000 shares of TWW's stock at $0.40 per share, adjusted to $4.00 per share due to reverse stock split, and 400,000 shares at $0.75 per share, adjusted to $7.50 per share due to the reverse stock split. In connection with this alleged exercise, SGI again used an incorrect mathematical formula to calculate the quantity of shares, and failed to tender a delivery of either of the original Warrant certificates to TWW.

14. All rights under the Warrants, pursuant to the terms of the Warrants, expired March 31, 2007.

15. A present justiciable controversy exists between TWW and SGI. TWW believes that SGI failed to properly exercise any rights under the Warrants; and, additionally, SGI's method of calculating the number of shares available to it is incorrect. SGI, conversely, asserts that it has properly exercised an option to acquire 70,000 shares at $4.00 per share and 400,000 shares at $7.50 per share.

16. By virtue of the controversy between the parties, TWW is uncertain as to its rights and obligations. TWW is in need of a final declaratory decree determining: (1) whether or not SGI properly exercised option rights in 2007 to acquire shares of TWW's stock as required by the Warrant Agreement; and (2) if so, in what quantity and at what price.

4

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

WHEREFORE, TWW prays that the Court take jurisdiction over the parties and subject matter, entering its final declaratory decree and awarding to TWW its costs.

                COFFEY BURLINGTON
                Counsel for Plaintiff
                2699 South Bayshore Drive, Penthouse
                Miami, Florida 33133
                Tel: 305-858-2900
                Fax: 305-858-2900

By: _____
      David A. Freedman
      Florida Bar No. 161817

5

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com